Cities Service Oil Company, Appellant, *v.* Haller.

Argued May 1, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused June 17, 1958.

*John Milton Ranck,* with him *Theodore S. Danforth, Herbert S. Levy,* and *Appel, Ranck, Levy & Appel,* for appellant.

*F. Lyman Windolph,* with him *James N. Lightner,* and *Windolph, Burkholder & Hartman,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, May 26, 1958:

Cities Service Oil Company appeals from the lower court's refusal to decree specific performance of an option to purchase real estate, which option was included in other agreements entered into with the defendants.

On May 16, 1951, Cities Service was the owner of certain premises located on the corner of West James Street and Harrisburg Avenue in the city of Lancaster. On that day Cities Service entered into a distributorship sales agreement with Haller for a term of one year, with renewal rights. Subsequently, and on October 9, 1952, the same parties entered into three separate agreements, which were to be coterminous and coextensive with the sales agreement, namely: (1) an agreement of sale, whereby Cities Service agreed to sell and convey the said lot to Haller upon certain terms and conditions; (2) a lease agreement of the premises in issue from Haller to Cities Service, containing the option to purchase the premises; and (3) a lease agreement of the premises from Cities Service to Haller.

As a consequence of these unusual arrangements the following occurred: the property was conveyed to Haller for $1,000, by deed dated December 29, 1952; Haller erected thereon a gasoline station of unique design, for approximately $8,308.80, cost stipulated by

the parties. Pursuant to their agreements the parties continued their respective relationships until October 27, 1955, when by mutual consent[1] the sales agreement of May 16, 1951, was "terminated" by Cities Service and Haller (effective October 31, 1955); and, by the same instrument, the existing leases were also "cancelled and terminated" by the parties.

---

[1]         CITIES SERVICE OIL COMPANY
Producers-Refiners-Marketers-Exporters
PHILADELPHIA 3 PA.
2012 Chestnut Street
October 27, 1955.

"Haller's Petroleum Sales, Inc.
20 West Andrew Street
Lancaster, Pennsylvania.
Gentlemen:

"This letter is written to confirm our understanding that the rights conferred upon J. Gilbert Haller, Distributor, and Cities Service Oil Company by the Distributor License and Sales Agreement dated May 16, 1951, being the same are *hereby terminated* as of October 31, 1955. (Italics supplied).

"It is further understood and agreed that the existing leases between J. Gilbert Haller and Cities Service Oil Company dated October 9, 1952, whereby J. Gilbert Haller leases to Cities Service Oil Company and Cities Service Oil Company leases back to J. Gilbert Haller the service station premises known as 113 James Street, Lancaster, Pennsylvania, are likewise *cancelled and terminated* in accordance with the provisions of Rider to Paragraph 2 to each lease. Such cancellation to be effective as of the close of business October 31, 1955. (Italics supplied).

"Will you kindly indicate your acceptance hereof by executing the original of this letter at the place set forth for your signature at the lower left-hand corner of this letter.

         "Very truly yours,
         CITIES SERVICE OIL COMPANY
         s/ P. S. Stetzer
         Division Manager.

PSS/sal
"Accepted and Agreed To:
s/ J. Gilbert Haller
27th day of October 1955."

Thereafter, by letter dated December 29, 1955, Cities Service notified Haller of its intention to purchase the premises under the provisions of the option clause of Haller's lease to Cities Service. Haller refused; hence this litigation.

In Pennsylvania, as in other jurisdictions, an option clause has been considered to be an offer for the stated terms and purposes set forth in the clause. So considered the option, as an offer, may be accepted during the term thereof, or rejected or terminated by failure to act within the requisite time. The pertinent provisions of this option clause are as follows: "Tenant [Cities Service] shall have the option upon expiration or earlier termination of the term hereby created and 60 days thereafter to purchase the demised premises and all buildings. . ." Under the circumstances here present, Cities Service by its own letter declared that the lease agreements were ". . . cancelled and terminated, . . ." effective October 31, 1955.

Construing the letter, as we must, most strongly against the parties drafting it (*Home Builders of Mercer County, Inc. v. Dellwood Corporation,* 379 Pa. 255, 108 A. 2d 731, and *Betterman v. American Stores Company,* 367 Pa. 193, 80 A. 2d 66), the only reasonable interpretation to be placed upon it is that it abrogated and terminated all provisions of the agreement, including the option clause. The letter constituted an effective rejection of Haller's offer, and was intended to conclude any and all rights that each may have obtained from their contractual relations. To declare otherwise, as Cities Service contends, would have the effect of rewriting the agreements of the parties.

The terms, "cancelled and terminated," are words of common usage and understanding, and must be given their normal construction. "While the intention of the parties and the meaning of the contract are gathered

primarily from the contents of the writing itself, . . . the words of a contract will be given a reasonable construction, a construction most equitable to the parties which would not give one of them an unfair or unreasonable advantage over the other.": *Shipley v. Pittsburgh & L.E.R. Co.*, 83 F. Supp. 722. In *Charles Dreifus, Leopold E. Block and Emanuel Dreifus, trading as Dreifus, Block & Co. v. Columbian Exposition Salvage Company*, 194 Pa. 475, 488, 45 A. 370, "cancellation" of a contract was declared to ". . . necessarily imply a waiver of all rights thereunder by the parties." Webster's New International Dictionary (2nd ed.) unabridged, defines "terminate" to mean "put an end to; to end." Thus construed, we are compelled to declare the letter from Cities Service to Haller as a cancellation and termination of the various agreements, in their entirety, and thus a rejection of Haller's offer giving Cities Service the right to purchase the property.

Appellant devoted a considerable portion of its brief to the admissibility of parol evidence where an ambiguity exists in a writing. But the letter itself is far from ambiguous and clearly sets forth the terms. Therefore, it only remained for the court to supply the legal effect to the terms thereof.

Since the letter constitutes a rejection of the option, it is not necessary to consider the appellant's remaining contention regarding the inequitable disproportion of the sums of money involved.

Decree affirmed; costs to be paid by the appellant.