J-A19005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| AARON SCHNIZER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CRAFTED SUPPLY COMPANY, LLC AND STEVE KUHN FLOORING, LLC | : | |
| | : | No. 166 WDA 2025 |
| APPEAL OF: CRAFTED SUPPLY COMPANY, LLC | : | |

Appeal from the Order Entered January 23, 2025
In the Court of Common Pleas of Allegheny County Civil Division at
No(s): GD-24-010555

BEFORE: BOWES, J., STABILE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED: FEBRUARY 26, 2026**

Appellant, Crafted Supply Company, LLC ("Crafted"), appeals from the trial court's order overruling its preliminary objection to compel arbitration. We affirm.

On November 22, 2024, Appellee, Aaron Schnizer, filed a second amended complaint against Crafted and Steve Kuhn Flooring, LLC ("Kuhn"). Therein, Mr. Schnizer alleged the following in pertinent part: on or about October 26, 2022, he entered into a contract with Crafted for the supplying of pre-finished wood flooring. Second Amended Complaint, 11/22/24, at ¶ 6. Mr. Schnizer attached a true and correct copy of the unsigned contract with Crafted as "Exhibit A" to the second amended complaint and incorporated it therein. *Id.* Upon delivering some of the flooring, Crafted assured Mr.

Schnizer that the flooring was safe to be stored at his residence and stated that the flooring had to acclimate to the home for several weeks prior to installation. *Id.* at ¶ 7. Subsequently, Mr. Schnizer hired Kuhn to install the flooring and monitor the humidity and temperature of the house for flooring maintenance/quality prior to its installation. *Id.* at ¶ 8. When starting installation, Kuhn indicated that the delivered flooring was of lesser quality than what was bargained for and, as the installation progressed, Kuhn noted that there were several issues with the flooring's finish. *See id.* at ¶¶ 11-14. By the end of installation, Kuhn relayed that a large number of scratches had accumulated on the flooring and recommended placing a Bona topcoat on the flooring. *Id.* at ¶ 14. Mr. Schnizer immediately notified Crafted of these issues, which led to Kuhn's speaking with Crafted and both Kuhn and Crafted's agreeing that a Bona coating should be applied. *Id.* at ¶¶ 15-16. Kuhn's treatment of the flooring with Bona coating was done negligently and resulted in damage to Mr. Schnizer's home, including the flooring. *Id.* at ¶ 17. A complete re-sanding of the floors is now the only option, which will cause Mr. Schnizer considerable expense and inconvenience. *Id.* at ¶ 18. Crafted's warranty document was also not produced for Mr. Schnizer's inspection prior to his signing the contract with Crafted and, had Mr. Schnizer been properly informed of the warranty, he would have never agreed to the re-coating, and would have considered alternate suppliers. *Id.* at ¶¶ 19, 21.

Mr. Schnizer subsequently brought claims against Crafted for breach of contract; breach of the Pennsylvania Home Improvement Consumer

Protection Act ("HICPA"), 73 P.S. § 517.1 *et seq.*; and violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq*. Notably, regarding the breach-of-contract claim, Mr. Schnizer claimed that a valid contract existed between him and Crafted for the purchase of pre-finished wood flooring, and that Crafted breached the agreement. *Id.* at ¶¶ 26-27. With respect to the HICPA claim, however, Mr. Schnizer alleged various ways in which Crafted's contract (*i.e.*, Exhibit A) violates HICPA, and claimed that "[t]he plethora of violations this contract contains renders it voidable and unenforceable and should therefore be held as such." *Id.* at ¶ 36.[1] Mr. Schnizer also brought claims against Kuhn for breach of contract; violations of the UTPCPL; and negligence.

Thereafter, Crafted filed preliminary objections to Mr. Schnizer's second amended complaint and a brief in support. Among other various preliminary objections, Crafted argued that Exhibit A contains an alternative dispute resolution clause which states that any disputes regarding Mr. Schnizer's purchase of products or services from Crafted must be resolved through arbitration. *See* Brief in Support of Preliminary Objections, 12/9/24, at 5-6;

---

[1] According to our sister court, "HICPA was enacted in 2008 with the purpose of protecting consumers from a variety of fraudulent and deceptive practices by home improvement contractors." *Mid-Atlantic Sys. of WPA, Inc. v. Tax Office of the Mun. of Monroeville*, 204 A.3d 579, 588 (Pa. Cmwlth. 2019); *see also Dobransky v. EQT Prod. Co*., 273 A.3d 1133, 1146 n.10 (Pa. Super. 2022) (*en banc*) (stating that decisions of the Commonwealth Court are not binding upon this Court, but may serve as persuasive authority) (citations omitted). Section 517.7 of HICPA addresses the content of home improvement and home improvement retailer contracts, and when such contracts are valid and enforceable. *See* 73 P.S. § 517.7.

*see also* Pa.R.Civ.P. 1028(a)(6) (providing that preliminary objections may be filed based on an agreement for alternative dispute resolution).[2] Further, it said that — to the extent Mr. Schnizer may argue that the arbitration clause is void because it does not comply with HICPA — HICPA does not apply because Exhibit A contains a choice-of-law provision, which states that Mr. Schnizer's purchase of products and services from Crafted, and the agreement between the parties, is to be governed by Virginia law. Brief in Support of Preliminary Objections at 6 n.3, *see also id.* at 5 n.2. Moreover, even if Pennsylvania law applies, Crafted asserted that it is not required to comply with HICPA. *See id.* at 6 n.3, 7-9.

Mr. Schnizer filed a response and brief in opposition. Therein, *inter alia*, Mr. Schnizer stated that Crafted must comply with HICPA, and that the arbitration clause is void because it does not comply with the requirements set forth in HICPA. Brief in Opposition to Preliminary Objections, 1/13/25, at 4-7 (unnumbered). In addition, Mr. Schnizer said that Exhibit A's choice-of-law provision does not apply because he never signed Exhibit A and, therefore, it was unenforceable. *See id.* at 8-9 (unnumbered). Mr. Schnizer elaborated that "if a contract expressly conditions effectiveness on signatures, then the agreement will not become enforceable until both parties have signed." *Id.* at 8 (unnumbered; citing *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 313

---

[2] Because the issue in this appeal concerns whether Mr. Schnizer's claims against Crafted must be arbitrated, we do not discuss the other preliminary objections filed by Crafted unless relevant to this issue.

(E.D. Pa 2020)).  He also said that, in *Franklin Interiors v. Wall of Fame Mgmt. Co., Inc.*, 511 A.2d 761 (Pa. 1986), the Court refused to give effect to an agreement where the agreement had language requiring approval of both parties as a condition precedent to enforcement.  Brief in Opposition to Preliminary Objections at 8.  He argued that Exhibit A "explicitly states that to start any job[,] Crafted required a signed copy of the estimate, terms and conditions, warranty, a physical sample/mockup, and a deposit[,]" and claimed that he "never signed the … [c]ontract which contains the estimates, terms and conditions, and warranty, and is therefore not bound by any terms contained in said contract."  *Id.* at 9 (unnumbered; internal quotation marks omitted).

Crafted thereafter filed a reply brief.  Among other things, Crafted asserted that the two cases Mr. Schnizer cited in his brief to support the proposition that he was not bound by Exhibit A because he did not sign it were distinguishable; however, it never addressed the language contained in Exhibit A raised by Mr. Schnizer nor compared that language to the language contained in the cases cited by Mr. Schnizer or other case law.  *See* Reply Brief in Support of Preliminary Objections, 1/21/25, at 3-4.[3]  Instead, it

---

[3] To distinguish *Franklin Interiors*, Crafted said that decision "was limited to whether a confession of judgment should be stricken because of a facial defect."  Reply Brief in Support of Preliminary Objections at 3.  Regarding *Ohama*, Crafted relayed that the court denied the defendant's motion to dismiss the plaintiff's breach-of-contract claim even though the defendant had not signed the document because, *inter alia*, the facts alleged in the complaint indicated that the defendant intended to be bound by the contract.  *Id.* at 4.

suggested that — although Mr. Schnizer now argued that he did not sign Exhibit A, rendering it invalid — this claim contradicts the allegations he made in the second amended complaint. *See id.* at 3 n.2, 4. Specifically, Crafted contended that Mr. Schnizer stated in the second amended complaint that a valid contract existed between him and Crafted, and that Crafted supposedly failed to abide by its terms. *Id.* at 4. In addition, Crafted pointed out that Mr. Schnizer had previously claimed to have signed the contract. *Id.* at 3 n.2 (noting that, in paragraph 19 of the second amended complaint, Mr. Schnizer asserted that Crafted did not produce its warranty document prior to Mr. Schnizer's signing the contract with Crafted). Further, Crafted insisted that the facts contained in the second amended complaint clearly indicate that Mr. Schnizer intended to be bound by Exhibit A insofar as he took delivery of the flooring and had it installed in his home. *Id.* at 4. As such, even if Mr. Schnizer did not sign Exhibit A, Crafted concluded he is still subject to its terms. *Id.* Moreover, Crafted continued to maintain that it did not have to comply with HICPA. *Id.* at 5-6.

On January 23, 2025, the trial court entered an order overruling Crafted's preliminary objections. In its order, the trial court stated: "I am not free and clear from doubt at this stage as to the applicability of [the] choice[-]of[-]law clause and consequently the remaining [preliminary objections]." Order, 1/23/25.

On February 10, 2025, Crafted filed a timely notice of appeal from the part of the trial court's order which overruled its preliminary objection that Mr.

- 6 -

Schnizer's claims must be resolved through arbitration. ***See*** Pa.R.A.P. 311(a)(8) (stating that an appeal may be taken as of right from "[a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties"); ***MacPherson v. Magee Mem'l Hosp. for Convalescence***, 128 A.3d 1209, 1213 n.4 (Pa. Super. 2015) (*en banc*) ("An order refusing to compel a case to arbitration is a threshold, jurisdictional question, that is appealable as an exception to the general rule that an order overruling preliminary objections is interlocutory and not appealable as of right.") (citations omitted). Crafted also filed a motion seeking to stay the proceedings pending its appeal.[4]

The trial court ordered Crafted to file a concise statement pursuant to Pa.R.A.P. 1925(b), and Crafted timely complied. It also granted Crafted's motion to stay proceedings pending the disposition of this appeal.

The trial court subsequently issued a Rule 1925(a) opinion. It opined, *inter alia*, that Mr. Schnizer "never signed the contract, and Crafted … fails to allege any factual basis or legal theory to explain why [his] signature was not required for the agreement to be fully enforceable." Trial Court Opinion ("TCO"), 3/5/25, at 4. The trial court also noted that Crafted's "decision to forgo discovery and accept the facts as pled in [Mr.] Schnizer's complaint is an error." ***Id.*** It stated that Crafted "has the burden of providing competent evidence — such as affidavits, admissions, depositions, and or/a hearing — to

---

[4] Kuhn had filed an answer, new matter, and cross-claim against Crafted.

convince [the court] that the parties have a valid arbitration agreement that governs their dispute." *Id.* at 5. It observed that Crafted "simply relied on the fact that [Mr.] Schnizer attached a copy of a contract to [his] complaint and never addressed why [Mr.] Schnizer never signed the contract or provided any other evidence indicating that the parties had agreed to all the terms contained in the attached contract." *Id.* Further, the trial court explained that — even if Exhibit A is a valid contract — the arbitration clause is unenforceable because it violates HICPA. *See id.* at 6-9.

On appeal, Crafted raises one issue for our review:

Whether the trial court erred in overruling Crafted['s] preliminary objection pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(6) and not directing that [Mr.] Schnizer's claims against Crafted … be submitted to arbitration because the contract between [Mr.] Schnizer and Crafted … contains a provision that states that [Mr.] Schnizer's claim must be resolved through arbitration.

Crafted's Brief at 3.

At the outset, we recognize:

Our standard of review of a claim that the trial court improperly overruled preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition.

In doing so, we employ a two-part test to determine whether the trial court should have compelled arbitration. First, we examine whether a valid agreement to arbitrate exists. Second, we must determine whether the dispute is within the scope of the agreement.

***Fellerman v. PECO Energy Co.***, 159 A.3d 22, 26 (Pa. Super. 2017) (cleaned up).

Although Crafted only raises one issue in its Statement of the Questions Involved, it divides its Argument section into four parts.[5]  For ease of disposition, we focus our analysis on Crafted's second argument that Exhibit A is binding on Mr. Schnizer even though he did not sign it.

Initially, Crafted recognizes that — despite some of the allegations made by Mr. Schnizer in the second amended complaint regarding Exhibit A — it cannot be judicially admitted that Exhibit A is a valid, enforceable contract. ***See*** Crafted's Reply Brief at 5, 6.[6]  While the trial court stated that Mr.

---

[5] These four subparts include the following:

> A. Crafted … was not required to provide evidence in support of its preliminary objections because [Mr.] Schnizer admitted that the document on which Crafted … was relying was the contract between him and Crafted….
>
> B. [Mr.] Schnizer was bound by the terms of the contract even through [*sic*] he did not sign same….
>
> C. A valid agreement to arbitrate existed between the parties….
>
> D. [Mr.] Schnizer's claims fall within the scope of the arbitration agreement….

Crafted's Brief at i (unnecessary capitalization omitted).  We remind Crafted that "[t]he argument shall be divided into as many parts as there are questions to be argued…."  Pa.R.A.P. 2119(a).  Despite Crafted's noncompliance with Rule 2119(a), our review is not impeded.

[6] "Statements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions and are binding on the party." ***John B. Conomos, Inc. v. Sun Co., Inc. (R & M)***, 831 A.2d 696, 712 (Pa. Super. 2003) (citation omitted).  "For an averment to
*(Footnote Continued Next Page)*

Schnizer was not bound by Exhibit A because he did not sign it, Crafted says "signatures are not required on a contract unless signing is expressly required by law or by the intent of the parties." Crafted's Brief at 17 (citing ***Shovel Transfer and Storage, Inc. v. Pa. Liquor Control Bd.***, 739 A.2d 133 (Pa. 1999)). Here, Crafted claims that Exhibit A does not state that it must be signed by all parties in order to be binding, ***id.*** at 19 (citation omitted), and conveys that our Supreme Court has concluded that a contract was binding even though it had not been signed by all the parties, where the parties clearly

_____

qualify as a judicial admission, it must be a clear and unequivocal admission of fact. Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and conclusions of law." ***Id.*** at 713 (citation omitted). ***See also Toppy v. Passage Bio, Inc.***, 285 A.3d 672, 682 (Pa. Super. 2022) (stating that "judicial admissions apply only to disputed facts and are exclusive of legal theories and conclusions of law") (cleaned up).

This Court has explained that "[t]he existence of a contract is a conclusion of law, not a disputed fact." ***Toppy***, 285 A.3d at 682 (citation omitted). Likewise, whether a contract is valid and enforceable is a legal, rather than factual, matter. Thus, it cannot be judicially admitted that Exhibit A is a valid and enforceable contract. ***Accord*** Crafted's Reply Brief at 5 ("Crafted is not arguing that [Mr.] Schnizer admitted that the contract and/or arbitration provision are valid."); ***id.*** at 6 ("Crafted is not claiming that [Mr.] Schnizer admitted that he is bound by the contract in question."). Additionally, we reiterate that Mr. Schnizer had also alleged that Exhibit A was voidable and unenforceable due to HICPA violations in his second amended complaint. Therefore, even if whether a valid contract existed was a factual admission, we would not consider such admission to be "clear and unequivocal" in this case. ***See John B. Conomos, Inc.***, ***supra***.

Further, we note that Crafted does not argue on appeal that Mr. Schnizer judicially admitted that he signed Exhibit A. ***See*** Second Amended Complaint at ¶ 19 ("At all times relevant hereto, … Crafted's warranty document was **not** produced for the inspection of [Mr. Schnizer] prior to his signing the Crafted Contract.") (emphasis in original). We therefore do not address this claim.

- 10 -

manifested assent to the terms of the agreement through their conduct. **Id.** at 17 (citing **Shovel Transfer**, 709 A.2d at 139). Moreover, despite the trial court's assertion that Crafted failed to explain why Mr. Schnizer's signature was not required, Crafted insists that it had responded to Mr. Schnizer's argument that the unsigned Exhibit A was unenforceable by distinguishing the cases Mr. Schnizer cited below, and pointing out that Mr. Schnizer's allegations in the second amended complaint supported that he intended to be bound by Exhibit A insofar as he took delivery of the flooring and had it installed in his home. **See id.** at 17-19 (mentioning, *inter alia*, **Ohama**).

We turn our attention to our Supreme Court's decision in **Shovel Transfer**, which Crafted references to the extent set forth above but does not discuss further. In **Shovel Transfer**, our Supreme Court considered whether the signatures of the Secretary of the Budget and the Comptroller of the Pennsylvania Liquor Control Board ("PLCB") were required for the formation of a valid and enforceable contract between Shovel Transfer and the PLCB. **Shovel Transfer**, 739 A.2d at 134. Shovel Transfer argued that the signatures were not required for the formation of the contract, whereas the PLCB argued that the signatures were necessary. **Id.** at 136. To address this question, our Supreme Court explained:

> The law of this Commonwealth makes clear that a contract is created where there is mutual assent to the terms of a contract by the parties with the capacity to contract. If the parties agree upon essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date. **As a general rule, signatures**

- 11 -

*are not required unless such signing is expressly required by law or by the intent of the parties.*

*Id.* (cleaned up; emphasis added).

Therefore, the Court initially inquired whether the signatures were required by statute. *Id.* The Court determined that its "review of the Liquor Code supports Shovel[ Transfer's] argument that the signatures of these officials were merely perfunctory and in no way compelled by statute." *Id.* It also determined that the signatures were not required under the Pennsylvania Code. *Id.* at 137.

Next, it evaluated if there was a written term in the contract that required the signatures for the formation of a valid contract. It reasoned:

> [E]ven if the signatures were not required by statute or regulation, they may still be required if the parties intended that a contract would not exist until all the signatures were affixed. *Lower Frederick Township v. Clemmer*, … 543 A.2d 502, 510 ([Pa.] 1988) ("[A] fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties."); *Stephens v. Carrara*, … 401 A.2d 821, 824 ([Pa. Super.] 1979) ("[W]here the written agreement contains the names of certain persons as parties, and one or more do not sign while others do, the question of whether those who sign are bound is to be determined by the intention and understanding of the parties."). It is firmly settled that the intent of the parties to a written contract is contained in the writing itself. *Krizovensky v. Krizovensky*, … 624 A.2d 638, 642 ([Pa. Super.] 1993); *accord Steuart v. McChesney*, … 444 A.2d 659 ([Pa.] 1982). When the words of a contract are clear and unambiguous, the intent is to be found only in the express language of the agreement. *Steuart*, 444 A.2d at 661. For example, in *Franklin Interiors*[, *supra*], a term of the contract provided that "this document does not become a contract until approved by an officer of Franklin Interiors." [*Franklin Interiors*,] 511 A.2d at 762. Based upon this express term, this [C]ourt concluded that an enforceable contract did not exist in the absence of the required approval. *Id.* at 763.

In reviewing the instant case, the Board of Claims relied upon our holding in **Franklin** for the proposition that a party may "condition the formation of a contract in any way it chooses, including the requirement that a valid contract would not be formed until all the signatures were affixed." However, as correctly discerned by the Commonwealth Court, **Franklin** is inapposite to the case at hand, since in the instant case there was no written term of the contract that required the signatures for the formation of a valid contract.

PLCB argues, and the lower tribunals agreed that the mere presence of the signature lines in the negotiated contract indicated the parties' intent to be bound only upon the execution of the document by all the signatories. However, contrary to the PLCB's assertions, the mere presence of signature lines does not determine whether the parties intended to be bound only upon the execution of the document by all the signatories. Instead, the inquiry is properly directed to whether the parties agreed to the terms in question and intended to be bound by the terms of the contract. **Stephens**, 401 A.2d at 824. "Where the parties have agreed orally to all the terms of their contract, and a part of the mutual understanding is that a written contract embodying these terms shall be drawn and executed by the respective parties, such oral contract may be enforced, though one of the parties thereafter refuses to execute the written contract." **Ketchum v. Conneaut Lake Co.**, … 163 A. 534, 535 ([Pa.] 1932).

Our review of the record reveals that, contrary to the findings of the lower tribunals, the evidence supports a finding that the parties intended to be bound under the terms of the contract regardless of the execution of all signatories. …

We are also persuaded by the fact that PLCB could have included a term in the contract that would have expressly provided that an enforceable contract would not exist until all the signatures were affixed to the contract. **Franklin**[, **supra**]. In the absence of such term, it is hornbook law that in determining the intent of the parties, ambiguities are to be construed against PLCB, the contract drafter. **Central Transportation, Inc. v. Board of Assessment Appeals of Cambria County**, … 417 A.2d 144 ([Pa.] 1980). Lastly, the parties, with the capacity to contract, clearly manifested assent to the terms of the contract through their conduct. Thus, the instant contract should be enforced, even though the officials refused to sign the written instrument. **Ketchum**, **supra**.

***Id.*** at 137-39.

Here, setting aside whether Mr. Schnizer's signature was required under HICPA or another statute, Crafted does not adequately address whether the parties intended that the contract would be valid without Mr. Schnizer's signature. Without any analysis of ***Shovel Transfer*** or the terms of Exhibit A, Crafted argues that "[t]he contract at issue does not state that it must be signed by all parties in order to be binding. Thus, even though [Mr.] Schnizer may not have signed the document in question, his conduct … binds him to the terms of said agreement." Crafted's Brief at 19 (citations omitted).

Problematically, Crafted never argued before the trial court that Exhibit A does not contain a term requiring Mr. Schnizer's signature to be binding, even though Mr. Schnizer had contended it did contain such a term below. Thus, we deem this argument waived. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").[7] Moreover, although raised by Mr. Schnizer below, Crafted does not discuss the following language from Exhibit A in its appellate brief either: "To start any job Crafted ***requires a signed copy*** of the estimate, terms and conditions, warranty, a physical sample/mockup, and a deposit." ***See*** Exhibit

---

[7] This may be why the trial court stated that Crafted "fails to allege any factual basis or legal theory to explain why [Mr.] Schnizer's signature was not required for the agreement to be fully enforceable." TCO at 4.

- 14 -

A at 1 (emphasis added).[8] We decline to confront and analyze this language in the context of *Shovel Transfer*, and other case law, for Crafted.[9] "[I]t is well settled that an appellant bears the burden of sufficiently developing his arguments to facilitate appellate review." *Commonwealth v. Armolt*, 294 A.3d 364, 376 (Pa. 2023) (citation omitted). "It is not for this Court to develop an appellant's arguments. Rather, it is the appellant's obligation to present developed arguments and, in so doing, apply the relevant law to the facts of the case, persuade us there were errors, and convince us relief is due because

_____

[8] Other language in Exhibit A also calls for Mr. Schnizer's signature. *See* Exhibit A at 3 ("Once you are ready to place an order hereunder, please sign and return such Estimate to us. These Terms and Conditions, along with your Estimate and the invoice (your 'Invoice') we will issue following receipt of your Estimate and the Deposit (defined below), will constitute the entire agreement (the 'Agreement') between the parties with respect to the Products and/or Services provided hereunder."); *id.* ("**PAYMENT:** Together with a signed Estimate, you will provide a certain percentage of the purchase price quoted in said Estimate, which percentage will be set forth in such Estimate (the 'Deposit').") (emphasis in original); *id.* at 5 ("I confirm that my action here represents my electronic signature and is binding.").

[9] To the extent Crafted references *Ohama*, *supra*, for the proposition that "where there are facts that establish an intention to be bound, enforcement should be permitted — even if the party who the contract is enforced against failed to sign the agreement[,]" Crafted's Brief at 18 (citation omitted), we observe that federal cases are not binding on this Court. *Commonwealth v. Huggins*, 68 A.3d 962, 968 (Pa. Super. 2013) ("[T]his Court is not bound by decisions of federal courts inferior to the United States Supreme Court, even though we may look to them for guidance.") (cleaned up). Moreover, Crafted completely ignores that the *Ohama* Court first analyzed the contractual language of the at-issue agreement in that case and whether it mandated signatures. *Ohama*, 434 F. Supp. 3d at 314 (explaining that "the relevant contract language" in the settlement agreement "gestures toward a signature requirement but does not make clear that the presence of signatures is <u>mandatory</u>") (emphasis in original).

of those errors." ***Commonwealth v. Rush***, 959 A.2d 945, 950-51 (Pa. 2008) (cleaned up). "If an appellant fails to do so, we may find the argument waived." ***Id.*** at 951 (citation omitted). Thus, we find waiver based on Crafted's deficient appellate argument as well.

Because Crafted did not sufficiently explain — in the trial court or on appeal — why Exhibit A does not require Mr. Schnizer to have signed the agreement for a valid contract to be formed, we find waived Crafted's argument that Exhibit A is a valid contract without Mr. Schnizer's signature. As Crafted has not demonstrated that a valid agreement to arbitrate exists, we discern no error in the trial court's overruling Crafted's preliminary objection to compel arbitration.[10]

Order affirmed.

Judge Stabile joins this memorandum.

Judge Bowes files a concurring memorandum.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 2/26/2026

---

[10] Given our disposition, we need not address Crafted's remaining arguments.